IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 2, 2004 Session

**STATE OF TENNESSEE v. DANNY JOE WRIGHT**

**Direct Appeal from the Circuit Court for Tipton County**
**No. 4337     Joseph H. Walker, Judge**

---

**No. W2003-01025-CCA-R3-CD  - Filed August 12, 2004**

---

The Defendant, Danny Joe Wright, was convicted of driving under the influence second offense and violating the open container law. He was also found to have violated the implied consent law. In this direct appeal, he argues that the trial court improperly limited his cross-examination of the arresting officer and that the trial court erred by refusing to admit the testimony of an expert witness in field sobriety testing. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which DAVID G. HAYES and ROBERT W. WEDEMEYER, JJ., joined.

Paul E. Lewis, Millington, Tennessee, for the appellant, Danny Joe Wright.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; Elizabeth Rice, District Attorney General; and James Walter Freeland, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Late in the evening on February 2, 2001, Deputy Steven Browder of the Tipton County Sheriff's Office was on patrol. At approximately 11:45 p.m., Deputy Browder observed a late-model Chevrolet truck, driven by the Defendant, weaving as it traveled along the road. Deputy Browder testified that the vehicle crossed the center line "three or four times." Because the vehicle "veered from his lane," Deputy Browder initiated a traffic stop of the vehicle. The deputy testified that the Defendant "smelled . . . like he had been drinking." He had the Defendant get out of the truck, and he asked him whether he had been drinking. The Defendant told him that "he had been drinking earlier." Also, the Defendant's speech was slurred. Based on his observations, Deputy Browder requested the Defendant to perform a series of field sobriety tests, including the one-legged stand, the finger-to-nose test, and the walk-and-turn test. First, the deputy instructed and demonstrated for

the Defendant how he was to perform the one-legged stand. The Defendant told the deputy that he could not perform that particular test. Next, Deputy Browder explained and demonstrated for the Defendant how to perform the finger-to-nose test. The deputy testified that the Defendant failed the test because he was unable to touch his finger to his nose with either hand. Finally, the deputy explained and demonstrated how to perform the walk-and-turn test. According to the deputy, the Defendant did not pass the test because he failed to touch his heel to his toe, he "wobbled," and he had to raise his hands for balance. Based on the officer's observations, including the Defendant's performance on these tests, Deputy Browder arrested the Defendant for driving under the influence of an intoxicant. The Defendant refused to submit to a blood test that would detect alcohol or drugs in his system. Deputy Browder also testified that he located an empty beer bottle in the front of the Defendant's vehicle, as well as a forty-ounce bottle of beer that was "about half full."

On cross-examination, Deputy Browder testified that he was trained to administer field sobriety tests at the Shelby County Training Academy. The Defendant's attorney sought to further cross-examine the deputy by utilizing a copy of the "Shelby County Metro DUI Field Sobriety Test Manual." However, the trial court refused to allow defense counsel to cross-examine Deputy Browder using the manual.[1]

The Defendant also sought to introduce the expert testimony of Williams Mitchell Taylor, a field sobriety instructor who was certified by the National Highway Traffic and Safety Administration. During the Defendant's offer of proof, Mr. Taylor testified that field sobriety tests indicate whether a driver has a blood alcohol level of .10 or greater. They are not designed to indicate whether a particular driver is "impaired." When an officer observes a subject perform one of the three most reliable tests, which include the horizontal gaze nystagmus test, the walk-and-turn, and the one-legged stand,[2] he or she should note the number of indicators that the subject has a blood alcohol level over .10. The officer should then "score" the test to determine whether an arrest should be made. Mr. Taylor explained that each test has a set of predetermined "clues" to which officers should pay attention. For example, on the walk-and-turn test, the only prescribed "clues" relate to how the subjects place their feet as they walk and whether they raise their arms more than six inches. Mr. Taylor testified that if any of the procedures are compromised - if the officer does not score the test correctly, if the officer uses less-than-reliable tests, if the officer looks for clues other than those which are predetermined - then the reliability of the tests is compromised or even invalidated.

---

[1]The "manual" referred to by defense counsel was marked as an exhibit for identification purposes only. The trial court did not allow the witness to identify the document or state whether he had ever seen it before. The document is not contained in the record on appeal.

[2]Mr. Taylor stated that the finger-to-nose test is not one of the recognized "standardized" tests because it has less than a fifty percent accuracy rate. By way of comparison, the accuracy rate for the horizontal gaze nystagmus test is seventy-seven percent, for the walk-and-turn test is sixty-eight percent, and for the one-legged stand is sixty-five percent.

The trial court ruled that the testimony of Mr. Taylor was inadmissible because the field sobriety tests in question were not scientific tests. Therefore, Mr. Taylor's testimony regarding the methods and procedures to be used when administering the tests would not be helpful to the jury. The trial court expressed its view that Mr. Taylor's testimony would merely call Deputy Browder's credibility into question. Because Mr. Taylor was not at the scene when the tests were administered, the trial court found that his testimony was not admissible.

The jury found the Defendant guilty of DUI and violating the open container law; he was also found to have violated the implied consent law. This appeal followed.

The Defendant first argues that the trial court erred by not allowing him to cross-examine Deputy Browder using "a manual for standardized field sobriety testing authored by the Shelby County, Tennessee Metro DUI Law Enforcement Agency."[3] The Defendant first asserts that the officer was testifying as an expert witness and that the manual qualified as a "learned treatise" which may be used to impeach the expert witness' credibility. See Tenn. R. Evid. 618. In the alternative, the Defendant apparently argues that even if the officer is testifying as a lay witness, the trial court abused its discretion by not allowing defense counsel to question him using the manual with which he had been trained, thus violating the Defendant's right to confront the witnesses testifying against him. See U.S. Const. amend. VI; Tenn. Const. art. I., § 9. We must conclude that the record before us is inadequate to allow us to properly review this issue.

Although the manual with which defense counsel desired to cross-examine the witness was marked as an exhibit for identification purposes only, it is not contained in the record on appeal. Because no offer of proof was made by the Defendant following the trial court's adverse ruling on this evidentiary issue, the witness never identified the manual as something with which he was familiar. Indeed, the manual referred to by defense counsel was never authenticated in any manner. Furthermore, because there was no offer of proof on this issue, we have no way of knowing what questions defense counsel intended to ask the witness utilizing the manual and no way of evaluating the relevance of this line of questioning.

It is the duty of the appellant to prepare a record that conveys a fair, accurate, and complete account of what transpired in the trial court with respect to the issues that form the basis for the appeal. See Tenn. R. App. P. 24(b); State v. Miller, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). When the record is incomplete and does not contain information relative to a particular issue, this Court may not make a ruling and must presume the correctness of the trial court's ruling. See State v. Gibson, 973 S.W.2d 231, 244 (Tenn. Crim. App. 1997). Appellate courts may only review what is in the record and not what might have been or should have been included. See Dearborn v. State, 575 S.W.2d 259, 264 (Tenn. 1978). Because the record before us does not allow us to properly review this issue, we must conclude that the Defendant has not demonstrated that he is entitled to a reversal of his conviction on this ground.

---

[3] Elsewhere in his brief, the Defendant refers to the document as "a manual for field sobriety testing entitled Standardized Field Sobriety Tests."

The Defendant's second argument is that the trial court erred by refusing to admit the expert testimony of Mr. Taylor. "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Tenn. R. Evid. 702. "The admissibility of expert testimony, the qualification of expert witnesses, and the relevancy and competency of expert testimony are matters which rest within the sound discretion of the trial court." State v. Harris, 839 S.W.2d 54, 69 (Tenn. 1992).

We conclude that the trial court did not abuse its discretion by not admitting the testimony of Mr. Taylor. With the exception of the horizontal gaze nystagmus test, field sobriety tests are not scientific tests requiring testimony of a qualified expert pursuant to Tennessee Rule of Evidence 702. See State v. Murphy, 953 S.W. 2d 200, 202-03 (Tenn. 1997): State v. Gilbert, 751 S.W.2d 454, 459 (Tenn. Crim. App. 1988). Mr. Taylor was not present at the scene when Deputy Browder administered the tests to the Defendant, so he had no personal knowledge of how the deputy explained, demonstrated, or evaluated the tests. In addition, the Defendant has failed to show that Mr. Taylor was knowledgeable about the training that the deputy received in field sobriety testing. Therefore, Mr. Taylor would have been unable to say whether Deputy Browder deviated from the procedures that he was taught at the Shelby County Training Academy. For these reasons, the trial court did not abuse its discretion by not allowing Mr. Taylor to testify, and this issue is without merit.[4]

The judgments of the trial court are affirmed.

_____
DAVID H. WELLES, JUDGE

---

[4]We also note that the Defendant has failed to cite any authority in his argument of this issue in his brief, which results in waiver of the issue. See Tenn. Ct. Crim. App. R. 10(b); Tenn. R. App. P. 27(a)(7).