IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2007

## STATE OF TENNESSEE v. DAVID HAROLD HAMMOND

**Appeal from the Circuit Court for Madison County**
**No. 02-567    Donald H. Allen, Judge**

_____

**No. W2007-00219-CCA-R3-CD  - Filed February 21, 2008**

_____

Appellant, David Harold Hammond, was convicted by a Madison County jury of one count of rape. As a result, the trial court sentenced Appellant as a Range II multiple offender to twelve years incarceration.   Because Appellant was on probation at the time the rape was committed, the trial court ordered Appellant's sentence to run consecutively to two existing felony sentences.  Appellant complains on appeal that the evidence was insufficient to support the rape conviction and that the trial court improperly ordered him to serve his sentence for rape consecutively to his existing sentences.  Because the evidence was sufficient to support the conviction and the trial court properly sentenced Appellant, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Gregory D. Gookin, Assistant Public Defender, Jackson, Tennessee, for the appellant, David Harold Hammond.

Robert E. Cooper, Jr., Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; Jerry Woodall, District Attorney General, and Shaun Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

According to the victim, Starlet Givens, she was raped by Appellant in March of 2002.  At trial, the victim testified that on March 29, 2002, she attended a party at her sister's apartment in Jackson, Tennessee.  Sequoia Greer, the victim's sister, lived in the same apartment complex as the victim.

The party started around 10:00 p.m. At some point that evening, Appellant showed up at the party. According to the victim, Appellant was not invited. The victim drank approximately seven shots of tequila during the party. The victim went into one of Ms. Greer's bedrooms to go to sleep around 1:30 a.m. She was accompanied to the bedroom by her friend, Ted Ingram. The victim testified that she slept in the bed, fully-clothed, with Mr. Ingram until approximately 2:45 a.m., when Mr. Ingram's "partner" woke him up to leave the party.

The victim testified that the next thing she remembered was waking up "when [she] felt [Appellant] coming out of me." According to the victim, the room was dark when she woke up. She felt someone having sex with her and turned on the lights to find Appellant in the room. The victim's pants and panties were pulled down to her ankles. The victim stated that she was menstruating at the time, and there was blood on the bed sheets. She saw Appellant getting dressed and noticed that he had blood on his pants. Appellant asked her to go to "dinner sometime." The victim did not scream out to anyone when she saw what Appellant was doing. She asked Appellant, "What the 'F' just went on?" Then the victim pulled up her pants and left the bedroom. She then exited the apartment and went to her own apartment. Ms. Greer testified that the victim was "very upset and crying and screaming and stuff" when she left the apartment.

When the victim got to her own apartment, she douched and took a bath. The victim then called Ms. Greer to tell her what had happened. The victim went back to Ms. Greer's apartment, but Appellant was no longer there. The victim's friends drove around town, looking for Appellant. When they were unable to locate Appellant, the victim drove to the police station to report the rape.

The victim was examined at the hospital for evidence of rape. There was no semen detected after a vaginal swab, but the DNA tests performed on the victim's underwear revealed the presence of Appellant's DNA "along the edge of the crotch area."

Michelle Lee, Appellant's sister, testified at trial on his behalf. According to Ms. Lee, she and Appellant were invited to the party by Anthony Hawkins, Ms. Lee's cousin. Ms. Lee did not drink any alcoholic beverages at the party. At some point, she overheard the victim say that "somebody is going to get fucked tonight." The victim denied making that statement.

Ms. Lee stated that Appellant fell asleep on the couch and slept there until around 2:45 a.m., when he got up from the couch. At that point, Ms. Lee saw Appellant go into the bedroom where the victim was sleeping. Appellant was going into the room to "get his coat." About five to ten minutes later, Ms. Lee saw the victim leave the bedroom. Contrary to Ms. Greer's testimony, Ms. Lee claimed that the victim did not appear upset when she left the bedroom or the apartment. Ms. Lee did not see any blood on Appellant's pants when he left the bedroom. After leaving the bedroom, Appellant and Ms. Lee went to the kitchen and made a sandwich. The two then left the apartment at approximately 3:30 a.m.

At the conclusion of the proof, the jury found Appellant guilty of rape as charged in the indictment. At a sentencing hearing, the trial court sentenced Appellant as a Range II, multiple

offender to a twelve-year sentence. The trial court ordered the sentence to be served consecutively to Appellant's sentences in "Madison County Case #92-791 and Gibson County Case #15622."

*Analysis*

On appeal, Appellant challenges the sufficiency of the evidence. Specifically, Appellant argues that "Greer and Givens' lack of credibility is such that their testimony was not true" and this Court should reverse Appellant's conviction. The State contends that the jury properly weighed the credibility of the witnesses and properly convicted Appellant.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W .2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996).

In pertinent part, rape is defined as:

[U]nlawful sexual penetration of a victim by the defendant or of the defendant by a victim accompanied by any of the following circumstances:
(1) Force or coercion is used to accomplish the act;
(2) The sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent; . . . .

T.C.A. § 39-13-503.

Viewing the evidence at trial in a light most favorable to the State, the evidence showed that Appellant entered the bedroom where the victim was sleeping alone. The victim testified that she

awoke with her clothes around her ankles. She felt Appellant penetrating and then "coming out of her." When the victim turned on the light, she saw Appellant putting on his clothes. Appellant's semen was found on the victim's panties and there was blood on the bed where the victim was lying. The victim also saw blood on Appellant's pants. According to at least one witness, the victim left the apartment in an upset manner. Although Appellant's sister testified that the victim did not look upset when she left the bedroom, the task of weighing the evidence at trial belongs to the jury. Apparently, the jury in this case chose to accredit the State's witnesses, including the victim. There was ample evidence for a rational jury to conclude that Appellant sexually penetrated the victim while she was either passed out or in a heavy sleep and therefore she did not consent to the penetration. Appellant is not entitled to relief on this issue.

*Sentencing*

Next, Appellant clams that the trial court erred in ordering his sentence to run consecutively to two previously existing eight-year sentences. Appellant concedes that he is a Range II multiple offender for sentencing purposes and that he was "on probation from Gibson County Circuit Court for a felony drug offense" at the time he was convicted. However, he maintains that the trial court's decision to order the sentences to be served consecutively was "discretionary, not mandatory." The State contends that Appellant has waived the issue for failure to cite to authority for his argument and, in any event, the trial court properly ordered consecutive sentencing.

As pointed out by Appellant, a trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists.[1]  One of the provisions allowing consecutive sentencing provides that consecutive sentencing is warranted if "the defendant is sentenced for an offense committed while on probation." T.C.A. § 40-35-115(b)(6). Additionally, whether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court. *State v. Hastings*, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999).

In the case herein, the State introduced a certified copy of the Criminal Trial Docket from Madison County Circuit Court showing that Appellant pled guilty to possession with intent to sell .5 grams or more of cocaine, a Class B felony, on September 15, 1992. The presentence report also reflects this conviction. As a result of the cocaine conviction, Appellant was sentenced to an

---

[1]We note that our supreme court's recent decision in *State v. Gomez*, 239 S.W.3d 733, 740 (Tenn. 2007), in which the supreme court determined that the use of enhancement factors not found by a jury or admitted by a defendant violated the Sixth Amendment, does not affect our review of consecutive sentencing issues. Before our supreme court's decision in *Gomez*, it had specifically noted that *Blakely v. Washington*, 542 U.S. 296 (2004), did not impact Tennessee's consecutive sentencing scheme. *State v. Robinson*, 146 S.W.3d 469, 499 n.14 (Tenn. 2004). In addition, this Court has consistently found that *Blakely* does not affect consecutive sentencing determinations. *See State v. Earice Roberts*, No. W2003-02668-CCA-R3-CD, 2004 WL 2715316, at *15 (Tenn. Crim. App., at Jackson, Nov. 23, 2004), *perm. app. denied*, (Tenn. Mar. 21, 2005); *State v. Lawrence Warren Pierce*, No. M2003-01924-CCA-R3-CD, 2004 WL 2533794, at *16 (Tenn. Crim. App., at Nashville, Nov. 9, 2004), *perm. app. denied*, (Tenn. Feb. 28, 2005).

eight-year sentence. The trial court suspended the sentence after the service of ninety days in jail with work release "if def. is employed at that time," then placed Appellant on supervised probation. Appellant's probation was first revoked in February of 1997, and Appellant was ordered to serve five months in incarceration prior to being placed back on intensive probation. Then, in November of 1999, Appellant's probation was revoked again, and he was ordered to serve eleven months and twenty-nine days in jail for the probation revocation. Apparently, Appellant was thereafter released by the Department of Correction "by mistake" prior to serving the eleven months and twenty-nine days for the revocation of probation. A capias was issued for Appellant's arrest. Finally, in May of 2006, after Appellant's arrest for the crime herein, the Madison County Circuit Court found that Appellant again violated probation and ordered him to serve his eight-year sentence in incarceration, with credit for time served. There was also proof introduced at the sentencing hearing that Appellant was on parole for a class B felony sentence from Gibson County for possession of cocaine. At the sentencing hearing, the trial court determined that Appellant clearly committed the offense at issue herein while on probation and ordered the sentence for rape to "run consecutively to the sentences for which he was on probation or parole." Specifically, the trial court found that "it does appear clearly that [Appellant] was on probation out of Madison County and perhaps on probation or parole out of Gibson County when he committed this new offense. So this sentence will run consecutive based upon the Court finding that."

While the record does not contain the exhibit that was introduced at the sentencing hearing to show that Appellant was on parole for an offense out of Gibson County at the time of the rape, the transcript of the sentencing hearing reflects that this proof was before the trial court. It is the duty of the appellant to prepare a record that conveys a fair, accurate, and complete account of what transpired in the trial court with respect to the issues that form the basis for the appeal. Tenn. R. App. P. 24(b); *State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000); *State v. Miller*, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). In the absence of an adequate record, this Court must presume the correctness of the trial court's ruling. *State v. Bibbs*, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991). Because it appears that Appellant was on parole out of Gibson County at the time he committed the crime herein, he faced mandatory consecutive sentencing. *See* Tenn. R. Crim. P. 32(c)(3)(A). The record does not contain a copy of that judgment, however we must presume the correctness of the ruling of the trial court. Moreover, even if the record were devoid of proof that Appellant was on parole and therefore subject to mandatory consecutive sentencing, the record supports discretionary consecutive sentencing under Tennessee Code Annotated section 40-35-115(b)(6) because Appellant was clearly on probation at the time he committed the offense herein. Appellant is not entitled to relief on this issue.

*Conclusion*

Based on the foregoing reasons and authority, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE